IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| SAMUEL DWAYNE CRAWFORD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | Case No. 13-3024-CV-S-ODS-SSA |

<u>ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS</u>

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability insurance benefits. The Commissioner's decision is affirmed.

I. BACKGROUND

A complete summary of the record is not necessary; the following will suffice for purposes of this appeal. Plaintiff was born November 6, 1955. He alleges he became disabled on February 22, 2006, due to arthritis, back pain, a herniated disc in his neck, depression, arthritis in his left elbow and fingers, and bursitis in his neck and shoulders.

On March 5, 2002, Plaintiff underwent an independent medical examination by Ted Lennard, M.D. R. 242-248. Dr. Lennard evaluated Plaintiff's permanent disability regarding a workers compensation claim. He diagnosed Plaintiff with: left ulnar neuropathy, status post ulnar nerve transposition; left rotator cuff tendonitis; and C5-6 disc abnormality. R. 246. Dr. Lennard opined that Plaintiff should avoid activities requiring use of the left upper extremity as well as lifting more than 10 pounds. R. 246.

From April 1, 2003, through April 5, 2007, and on September 16, 2008, Plaintiff received care from his primary physician, Malcolm Oliver, M.D. R. 170-181, 214-215, 225-234, 249-251, 454-456. Dr. Oliver diagnosed Plaintiff with major depression,

cervical radiculopathy at C5-C6, left rotator cuff tendinitis (chronic), C5-C6 ulnar neuropathy, and arthritis. R. 172, 174, 176, 215, 226, 455. On May 7, 2003, Dr. Oliver determined Plaintiff's residual functional capacity ("RFC") included the following: lift or carry up to 20 pounds occasionally or frequently; stand/walk up to 45 minutes at a time, and up to 5 hours of an 8-hour day; and sit up to 60 minutes at a time, and up to 5 hours of an 8-hour day. R. 220-221. On April 2005, Plaintiff saw Dr. Oliver for a wellness exam. R. 179. There were no findings made at the examination. On November 17, 2005, Dr. Oliver again determined Plaintiff's RFC, which included the following: lift or carry less than 10 pounds occasionally or frequently; stand/walk up to 1 hours at a time, and up to 4 hours of an 8-hour day; and the need to take unscheduled breaks, at the rate of 2-3 times, during an 8-hour day, and lasting 20-30 minutes each time. R. 217-219. Plaintiff saw Dr. Oliver twice in April 2006. R. 171-175. The medical records did not reveal any limitations in gait, strength, or the ability to manipulate objects. R. 171-175. Dr. Oliver again determined Plaintiff's RFC on October 12, 2006, as follows: lift or carry up to 5 pounds occasionally or frequently; stand/walk up to 4 hours of an 8-hour day; sit up to 3 hours of an 8-hour day; and the need to take unscheduled breaks, at the rate of 2-3 times, during an 8-hour day, and lasting 20-30 minutes each time. R. 201-202. On April 5, 2007, Dr. Oliver opined that Plaintiff had limited active range in motion in his left shoulder but almost full passive range of motion. R. 215.

From April 4, 2005, through May 8, 2006, Plaintiff sought treatment from Stanley Hayes, M.D. R. 155-169, 182-184. Dr. Hayes diagnosed Plaintiff with rheumatoid arthritis. R. 155-157. A medical record completed by Dr. Hayes dated January 9, 2006, indicated that Plaintiff was functional for all activities of daily living and that Plaintiff had been building a garage. R. 155.

An initial administrative hearing was held on October 17, 2008. R. 24-49. Upon questioning, Plaintiff testified he did not build a garage on his property and instead "kind of supervised it." R. 40-41. On November 3, 2008, the ALJ determined Plaintiff was not disabled. R. 9-21. Plaintiff subsequently filed suit in this Court, and on April 5, 2011, the Court entered an Order and Opinion reversing the Commissioner's final decision and remanding for further consideration. R. 298-302. The Court remanded for three reasons: (1) the ALJ failed to follow regulations; (2) the ALJ determined Plaintiff's

2

complaints of pain were not credible due to perceived inconsistencies in Plaintiff's statements that did not exist; and (3) the ALJ determined that Plaintiff was not credible because of his daily activities, but the ALJ described the activities without including relevant information that portrayed him to be less active. R. 299-301. With regard to Plaintiff's daily activities, the Court stated:

> In support of the finding that Crawford "consciously attempted to portray limitations than [sic] are not actually present," the ALJ cited a doctor's note from January 2006 stating Crawford was "building a garage." The ALJ neglected to mention Crawford's testimony he did not build the garage; his ex-brother-in-law did a lot of the construction, with Crawford "kind of supervising it."

R. 301 (citing R. 41).

After remand, another hearing was held. The Social Security Administration called medical expert, Arthur Lorber, M.D., who was a specialist in orthopedic surgery, to testify at the hearing. Dr. Lorber reviewed the entire medical record and opined that Plaintiff could lift up to 50 pounds occasionally and 20 pounds frequently, with no constant overhead activities with the upper extremities. R. 481, 485. Dr. Lorber gave Dr. Oliver's opinion little weight because he was not a specialist in musculoskeletal diseases and there was no basis to support the severe restrictions he imposed. R. 488. Dr. Lorber also referenced Dr. Hayes' opinion which stated Plaintiff was fully functional in all daily activities and that Dr. Hayes stated Plaintiff had completed building a garage. R. 484-485. Dr. Lorber believed that in building the garage, Plaintiff would have to have been lifting materials weighing at least 50 pounds. R. 487.

On February 24, 2012, the ALJ issued his opinion. At step one of the five-step sequential process the ALJ determined Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of February 22, 2006, through his date last insured of December 31, 2007. R. 266. At step two, the ALJ found Plaintiff had the following severe impairments: left ulnar neuropathy, cervical radiculopathy, C5-6 abnormality, left shoulder impingement, left rotator cuff tendonitis and inflammatory arthropathy. R. 266. At step three, the ALJ determined Plaintiff did not have a listed impairment. R. 258. At steps four and five, the ALJ concluded:

> [C]laimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except: he can lift [and/or] carry up to 50 pounds

> occasionally and 20 pounds frequently. He is limited to no constant overhead activities with the upper extremities.

R. 269. Next, the ALJ found, based on the vocational expert's testimony, that Plaintiff was unable to perform any past relevant work, but considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including a kitchen helper and a laundry worker. R. 274. Finally, the ALJ concluded that Plaintiff was not disabled. R. 275.

## II. STANDARD

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision "simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. DISCUSSION

### 1. The ALJ Properly Weighed Dr. Lorber's Opinion

Plaintiff contends the ALJ assigned too much weight to the opinion of Dr. Lorber. Plaintiff's main complaint to Dr. Lorber's opinion is that he referenced Dr. Hayes' treatment note indicating that Plaintiff had built a garage. Plaintiff argues that the ALJ "repeated the identical error" made by the ALJ before the case was remanded. The Court disagrees.

At the administrative hearing, Dr. Lorber testified that he had reviewed the medical evidence in this case. R. 481. He noted that Plaintiff saw his treating rheumatologist, Dr. Hayes, in July 2005, who reported that Plaintiff was fully functional with all daily activities. R. 156, 484. Dr. Lorber mentioned that Dr. Hayes noted on

4

January 9, 2006, that Plaintiff had just completed building a garage. Dr. Lorber opined that Plaintiff had the following residual functional capacity: occasionally lift up to 50 pounds, and frequently lift 20 pounds; no limitation on his ability to stand/walk; no constant overhead activities with the left upper extremity. R. 485.

The Court concludes that the ALJ properly assigned significant weight to Dr. Lorber's opinion. The ALJ acknowledged Dr. Lorber's reliance on Dr. Hayes statement that Plaintiff had been building a garage, but also highlighted Plaintiff's assertion that he actually hired a contractor to build the garage. R. 272. The ALJ then noted, "[r]egardless, Dr. Lorber reviewed and opined on [Plaintiff's] entire record." R. 272. The Court concludes it was proper for the ALJ to rely on Dr. Lorber's opinion because: (1) Dr. Lorber was a specialist in orthopedic surgery; (2) his opinion was supported and explained by the medical evidence—including Dr. Hayes' opinion that Plaintiff was fully functional in his daily activities; and (3) Dr. Lorber reviewed the entire medical record before giving his opinion. R. 272.[1]

## 2. The ALJ Properly Weighed Dr. Oliver's Opinion

Next, Plaintiff argues the ALJ improperly gave little weight to Dr. Oliver's opinion. This argument is without merit. "While a treating physician's opinion is usually entitled to great weight, the Eighth Circuit has cautioned that it 'does not automatically control, since the record must be evaluated as a whole.'" *Id.* (quoting *Bentley v. Shalala*, 52 F.3d 784, 785-86 (8th Cir. 1995)). Accordingly, a treating physician's opinion can be discounted where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions. *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000). The ALJ must give "good reasons" for the particular weight given to a treating physician's evaluation. 20 C.F.R. § 404.1527(d)(2).

---

[1] The Court also rejects Plaintiff's argument that the ALJ failed to provide a full and fair hearing since Dr. Lorber was never made aware of Plaintiff's denial that he built a garage. Again, Dr. Lorber based his decision on the entire medical record. It is not Dr. Lorber's job to assess Plaintiff's credibility. *See, e.g., Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide . . . .").

5

Here, the ALJ gave good reasons for giving little weight to Dr. Oliver's opinion. First, the ALJ pointed out that the limitations imposed by Dr. Oliver were not supported by his treatment notes. R. 272. For example, Dr. Oliver's treatment notes from May 2005, which did not reveal any limitations or findings (R. 179), is inconsistent with the RFC opinions he made in 2003, 2005, and 2006. R. 215, 217-219, 220-221. Further, all three RFC opinions were inconsistent to each other.

Finally, the ALJ noted that Dr. Oliver's opinion was inconsistent with Plaintiff's conservative treatment. R. 272. Plaintiff had little treatment during the relevant period and only saw Dr. Oliver on three occasions during the relevant period. R. 171-75, 215. It was proper for the ALJ to assign little weight to Dr. Oliver's opinion due to Plaintiff's conservative treatment. *See McGinnis v. Chater*, 74 F.3d 873, 875 (8th Cir. 1996). The Court concludes that the ALJ properly assigned little weight to Dr. Oliver's opinion as it was inconsistent with treatment notes and inconsistent with Plaintiff's conservative course of treatment.

### C. The ALJ Properly Gave Limited Weight to Dr. Lennard's Opinion

There is substantial evidence in the record as a whole to support the ALJ's decision to apply limited weight to Dr. Lennard's opinion. Dr. Lennard was a consultative examiner who opined that Plaintiff should avoid activities that required overhead use of the left upper extremity as well as lifting no more than 10 pounds. R. 246. The ALJ properly noted that Dr. Lennard did not have a treating relationship with Plaintiff and his opinion was not supported by the record as a whole. R. 273. Dr. Lennard performed an independent examination in March 2002, which was four years prior to the beginning of the relevant period in this case. The ALJ cited several of Plaintiff's self-reported activities of daily living that were inconsistent with Dr. Lennard's opinion, including maintaining his personal care, preparing simple meals, shopping in stores for groceries, doing some laundry, occasionally hunting and fishing, and driving a motor vehicle. R. 273. The Court concludes it was proper for the ALJ not to adopt Dr. Lennard's opinion.

D. The ALJ Properly Assessed Plaintiff's Credibility

Finally, Plaintiff argues the ALJ's evaluation of Plaintiff's credibility was improper. Specifically, Plaintiff contends that the ALJ should not have cited to Plaintiff's daily activities. This argument is without merit. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). The Court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). In evaluating a claimant's subjective complaints, the ALJ must consider the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The *Polaski* factors include: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; (7) the absence of objective medical evidence to support the claimant's complaints. *Id.*

Here, there is substantial evidence in the record on the record as a whole to support the ALJ's finding that Plaintiff's descriptions of his symptoms and limitations were generally inconsistent and unpersuasive. It was proper for the ALJ to consider Plaintiff's activities of daily living in assessing his credibility. Plaintiff's activities of daily living included maintaining his personal care, preparing simple meals, doing laundry, completing some light household chores, driving, taking out the trash, watching television, doing light shopping, and maintaining his own finances. R. 271. "'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'" *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)).

Although the ALJ considered Plaintiff's activities of daily living when assessing his credibility, they were not determinative—the ALJ also considered several other factors. The ALJ noted that Plaintiff did not require any aggressive medical treatment or frequent hospital confinement as a result of his impairments. R. 271. The record also showed that Plaintiff failed to follow-up on recommendations made by the treatment doctor, which the ALJ noted suggested that his symptoms may not have been as

7

serious as alleged. R. 271. Under the facts of this case, the Court cannot conclude that the ALJ improperly weighted Plaintiff's credibility regarding her subjective complaints of pain. This Court will not substitute its opinion for that of the ALJ, who was in a better position to assess credibility. *Brown v. Charter*, 87 F.3d 963, 965 (8th Cir. 1996). Although it may be that any one of these factors alone would be insufficient to justify the ALJ's findings, collectively they serve as substantial evidence supporting the ALJ's decision.

## IV. CONCLUSION

There is substantial evidence on the record as a whole to support the ALJ's decision. The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: March 21, 2014   UNITED STATES DISTRICT COURT